## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LORENZO and SONYA SADLER

      Plaintiffs,

v.                                                              Case No.: 1:14-cv-01489-TCB

NATIONSTAR MORTGAGE LLC and
FREDDIE MAC

      Defendant(s).

_____

J. G. DAVIS & ASSOCIATES, LLC
By:  JOSHUA G. DAVIS (#514674)
Attorney for Plaintiffs
303 Perimeter Center North, Suite 300
Atlanta, GA 30346
Phone: (855) 543-2847
Fax:    (855) 814-3619

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

NOW COMES the Plaintiffs, LORENZO and SONYA SADLER, by and through their attorney, JOSHUA G. DAVIS, files this Amended Complaint for Damages and Injunctive Relief, which states the following:

### PARTIES

1.

Plaintiffs Lorenzo and Sonya Sadler (hereinafter referred to as "Plaintiffs") reside in the State of Georgia, City of Conyers, more specifically at 1036 Falls

Brooke Drive, 30094.   Plaintiff's suit regards property located at 1036 Falls Brooke Drive, Conyers, GA 30094 (hereinafter, also, "Property")

2.

Defendant NationStar Mortgage LLC (hereinafter "Nationstar"), doing business at 350 Highland Drive, Lewisville, TX 75067 whose registered agent is the Corporation Service Company, at 40 Technology Pkwy S., Suite 300, Norcross, GA 30092.

3.

Party in interest Freddie Mac (hereinafter "Freddie Mac"), doing business at 2300 Windy Ridge Pkwy SE, Suite 200 North Tower, Atlanta, GA 30339-5665, who can be served at the same.

## VENUE AND JURISDICTION

4.

Cases respecting title to land must be brought in the county in which the land (or a part thereof in case of a single tract) lies.  Ga. Const. of 1983 Art. VI, Par. II, Sec. II as a case "respecting title to land."  This Court is the proper court of venue to bring this Petition as it respects the property in question, which is located in Rockdale County, and further since the Supreme Court of Georgia has held that the Superior Court is the Court of proper jurisdiction to matters involving title over land. *Setlock v. Setlock,* 286 Ga. 384, 688 SE2d 346 (2010).  ("For the purpose of enabling all persons owning real estate within this state to have the title thereto settled and registered[,]…the *superior court* of the county in which the land is

located shall have exclusive original jurisdiction of all petitions and proceedings had thereupon.") (Emphasis supplied) O.C.G.A. §44-2-60.

## FACTS

5.

On or about September 3, 2003, Plaintiffs entered into a loan agreement with Greenpoint Mortgage Funding, Inc., with Security Deed (hereinafter "Deed") securing a loan in the amount of $160,000.00, as recorded in the Office of the Clerk of Superior Court of Rockdale County, in Book 2881, Page 50, for the Property located at 1036 Falls Brooke Drive, Conyers, GA 30094 (hereinafter "Property"). *See* Ex. A

6.

On or about November 14, 2003, Freddie Mac acquired the loan (according to information accessed via their loan lookup search, last accessed July 9, 2012). *See* Ex. B

7.

On or about May 06, 2011 (recorded May 13, 2011 in Book 4992, Page 183), Mortgage Electronic Registration Systems (MERS), acting as nominee for Greenpoint Mortgage Funding, Inc., assigned the Deed over to BAC Home Loan Servicing, LP. *See* Ex. C

8.

On or about January 13, 2012, Bank of America (hereinafter "BOA") approved the Plaintiffs for "a trial period plan under the Freddie Mac Modification

Program." The new loan payments were set at $966.60 and were to be made on the first day of the month for February, March, and April. The paperwork stated that "in order to accept the terms of the new modification, [Plaintiffs] need only to make these payments. After three months of payments the mortgage will be permanently modified." The paperwork also stated that BOA "wants to assist [the Plaintiffs] with finding a long-term solution" to their loan issues, and that their goal "is to help make your mortgage more affordable, and most importantly, help you keep your property and avoid foreclosure." (*See* Exhibit D).   The loan modification documentation went on to state that "we will not proceed to foreclosure sale during the trial period," and that they will "receive the detailed account of the modification once [Plaintiffs] have made all payments." *See* Ex. D

9.

On or about April 23, 2012, BOA notified the Plaintiffs that their loan would be transferred to Nationstar Mortgage LLC, on May 16, 2012. *See* Exhibit E. This notice also stated, "Please be assured that this transfer does not affect any other terms or conditions of your mortgage loan, only those terms related to the servicing of the loan." *See* Ex. E

10.

On May 31, 2012, Nationstar Mortgage LLC sent a letter to the Plaintiffs making them aware of their balance. The letter stated that at the time of transfer, their principle was $145,107.00. The letter also made mention that the loan was

owed to Freddie Mac and serviced by Nationstar Mortgage LLC. The May 31, 2012, letter however was not the required pre-acceleration notice required by the September 3, 2003 security deed Plaintiff signed, despite the letter informing Plaintiff that he had 30 days to dispute such debt. Plaintiff contends he never received the required pre-acceleration notice under paragraph 22 of the security deed. *See* Ex. F

### 11.

A banking statement summary generated from a checking account with Bank of America shows that Plaintiffs made each of their required payments to Bank of America.   Furthermore, a payment was made on June 1, 2012 to Nationstar, which was accepted. *See* Ex. G

### 12.

On June 29, 2012 Bank of America, N.A. provided a "Corporation Assignment of Mortgage" to NationStar Mortgage, LLC. Such assignment was recorded in the Rockdale County Superior Court Records on July 10, 2012. *See* Ex. H

### 13.

On July 18, 2012, the offices of J.G. Davis & Associates, LLC sent a Letter of Demand to BOA and NationStar on behalf of the Plaintiffs. The letter stated the facts of the case, demanded that Nationstar recognize Lorenzo Sadler's loan modification, that BOA pass the modification information on to Nationstar

Mortgage LLC, and that NationStar cease all foreclosure actions against Plaintiffs. *See* Ex. I

14.

On July 20, 2012, Plaintiffs were notified that despite making their modified loan payments, their loan account was handed to the Law Offices of McCalla Raymer, LLC to begin foreclosure proceedings. In this letter, alternatives to foreclosure were listed and contact information was given so that Plaintiffs might discuss those options. The inclusion of this information gives the impression that NationStar wanted Plaintiffs to mistakenly believe that they had an interest in avoiding foreclosure. *See* Ex. J

15.

On July 26, 2012, J.G. Davis & Associates, LLC, called NationStar and spoke with Thomas Browning (account manager), number (469) 549-3111 extension #314. Mr. Browning informed J.G. Davis & Associates, LLC that Bank of America failed to send Nationstar Plaintiffs' underwriting documents concerning their loan modification, but was aware of the loan modification. Mr. Browning further stated that Freddie Mac was the Lien Holder and that at that time Plaintiffs did not have a scheduled foreclosure date.

16.

On July 31, 2012, the Plaintiffs received a Notice of Foreclosure Sale from the Law Offices of McCalla Raymer, LLC.  In the letter, it was stated that Freddie Mac owned the Note and Security Deed, but that Nationstar Mortgage LLC was

the servicer of the deed. It also provided a non-judicial sale date for Plaintiffs' property on the first Tuesday of September 2012, on the courthouse steps of Rockdale County. *See* Ex. K. However, the Notice of Sale under Power, the Notice itself as made public, does not mention Freddie Mac as the owner of the loan. Instead, it only mentions that the Deed was "last transferred to Nationstar Mortgage LLC," wholly neglecting any mention of Freddie Mac. *See* Ex. L

17.

On August 1, 2012 J.G. Davis & Associates, LLC received a letter from NationStar concerning Plaintiffs loan that stated, "…We thank you for bringing this matter to our attention…are in the process of reviewing the account with consideration to the issues cited…Our goal is to provide you with a response no later than August 11, 2012…" *See* Ex. M

18.

On August 14, 2012 J.G. Davis & Associates, LLC received a letter from NationStar concerning Plaintiff's loan stating, "…NationStar will need to validate the trail agreement from Bank of America…Once this process is completed, the modification department will be able to move forward with the final steps of the review. Please note we are not in need of any new documents…" *See* Ex. N

19.

On August 23, 2012 the Law of Office of J.G. Davis & Associates, LLC filed suit against NationStar, Freddie Mac, and McCalla Raymer in the Superior

Court of Rockdale County for their actions in attempt to wrongfully-foreclose on the Sadler's property and breached the modification agreement. *See* Ex. O

20.

On September 24, 2012 McCalla Raymer filed a Notice of Removal of the Sadler's Rockdale County Superior Court Complaint to the U.S. District Court for the Northern District Court of Georgia Atlanta Division. *See* Ex. P

21.

On June 27, 2013 counsel for Nationstar emailed Plaintiffs' counsel informing him that it was his understanding that Nationstar had mailed Plaintiffs permanent modification documents on June 21, 2013. Counsel for Nationstar also provided a copy of such modification in the June 27, 2013 email. See Ex. Q. The modification that was emailed to Plaintiffs' counsel provided that the modification was to be "automatically" modified on October 1, 2013, with the new loan maturity date of September 1, 2053. Mr. Sadler's total new monthly payment was to be $810.35, which was inclusive of a 5% interest rate. Mr. Sadler's first modified payment was to be due October 1, 2013. See Ex. R

22.

On July 1, 2013 Plaintiffs' counsel emailed the permanent modification to Plaintiffs with the understanding that Plaintiffs had already received the modification documentation as Nationstar's counsel indicated, however it was later discovered that Plaintiffs never received such modification in the mail.

Nonetheless, Plaintiff, Lorenzo Sadler, executed the agreement that was provided via email and mailed such to Nationstar as directed. See Ex. Q & R

23.

On July 9, 2013 Plaintiffs' counsel emailed Nationstar's counsel the fully executed modification. It was also communicated that Plaintiffs never received the mailed copy of the modification, but intended to accept the modification. See Ex. Q

24.

On September 25, 2013, Plaintiffs sent through certified mail their first permanent modification payment of $810.35 for October 2013. NationStar's mailroom received such payment on September 30, 2013. *See* Ex. S

25.

On October 28, 2013, Plaintiffs' again obtained a cashier's check to make their November 2013 modified mortgage payment of $810.35. Such payment was sent to Nationstar. *See* Ex. T

26.

On or around November 6, 2013, Nationstar sent Mr. Sadler a notice indicating that his payment of $810.35 was being returned because "these funds… are insufficient to bring your account current." The notice went on to state that the total amount required to bring the account current was $36,888.92. The notice clearly exhibited that Nationstar had failed to modify Plaintiff's loan as required by

the terms in the permanent modification signed by Mr. Sadler. Further, the letter indicated that such was an attempt to collect a debt. *See* Ex. U

27.

On November 27, 2013, Plaintiffs' obtained a cashier's check in the amount of $810.35 for payment of their December 2013 modified mortgage payment. Such payment was sent to Nationstar via certified mail. *See* Ex. V

28.

On December 9, 2013, Plaintiffs' sent the law firm of J.G. Davis & Associates, LLC a letter chronicling the issues they were encountering with Nationstar since their loan was supposed to be modified in October of 2013. The letter stated that they were having payments sent back, they were unable to pay their mortgage online as they had in the past, they were unable able to speak with customer service because of a "CODE" on the account, and other problems they were dealing with since signing the modification contract. Further, the letter expressed the frustration and worries that they were experiencing because of fear of being put back in foreclosure. *See* Ex. W

29.

On December 23, 2013, Plaintiffs obtained a cashier's check for $810.35 to pay for their January 2014 modified mortgage payment, which they sent to NationStar via certified mail. *See* Ex. X

30.

On January 27, 2014, Plaintiffs' sent NationStar a check for their February 2014 payment, which was deducted from their account on February 5, 2014 by NationStar. *See* Ex. Y

31.

On or around February 5, 2014, Freddie Mac the owner of their mortgage sent Plaintiffs a letter. The letter stated that, "NATIONSTAR MORTGAGE LLC services the mortgage on our (Freddie Mac) behalf. They have notified us that your mortgage payment has recently been delinquent, and our experience shows us that many foreclosures can be avoided if homeowners act quickly…" Plaintiffs received this letter even after paying on their modified mortgage for five-months on time.  *See* Ex. Z

32.

After Plaintiffs received the February notice from Freddie Mac, they began being inundated with solicitations from companies that claimed that they could help them obtain a loan modification and avoid foreclosure. Again, Plaintiffs never missed a modified payment and were now in the same position before when Nationstar refused to honor their Bank of America, N.A. loan modification. Such correspondences stressed Plaintiffs preventing them from effectively performing at their respective jobs. *See* Ex. A1

33.

Plaintiffs distraught about NationStar's continued pursuit of foreclosure and unwillingness to honor the permanent modification, checked Mr. Sadler's credit-report on February 24, 2014 and discovered that NationStar was still reporting to credit agencies that he was delinquent on his loan. Furthermore, the report made no mention of the loan being modified, despite the permanent modification stating that the loan would become "automatically" modified October 1, 2013.  *See* Ex. B1

34.

On April 1, 2014, Plaintiffs' checked their online mortgage account with Nationstar. The account referenced the original loan terms and payments, while also citing that Plaintiffs' were more than $30,000.00 behind on their mortgage This evidenced that Nationstar continued to refuse to acknowledge the modification that it gave Plaintiffs in June of 2013. *See* Ex. C1

35.

Both, Mr. and Mrs. Sadler have endured great stress from Nationstar's and Freddie Mac's actions. Mrs. Sadler has gone to the doctor for the reported stress that NationStar's actions have caused. Further, both Plaintiffs have reported a decline in their marriage because of the mental stress of trying to figure out why Nationstar will not honor their permanent loan modification. Plaintiffs can no longer trust Nationstar and feel that even if Nationstar were to finally implement the modification, it would find a way to put them back into foreclosure. Plaintiffs

continue to make their required permanent modification payments, which Nationstar accepts, but does not apply to the modified balance. *See* Ex. D1

## COUNT I – BREACH OF CONTRACT

The Plaintiffs hereby incorporate, re-allege, and adopt by reference as if more fully stated, paragraphs 5 - 35 herein above.

36.

**ELEMENTS:**

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. Further, "where an offer is in writing, recites the essential terms of the agreement, and is signed by the party to be charged, the offer itself is sufficient to satisfy the statute of frauds, provided it properly has been accepted so as to form a contract." *See Smith v. Davis,* 245 Ga.App. 34, 536 S.E.2d 261, 263 (Ga.Ct.App.2000).

37.

**MODIFICATION CONTRACT:**

Nationstar offered a permanent modification to Plaintiff on June 21, 2013, which was supposed to be mailed to Plaintiff, but Plaintiff never received such. Nonetheless, Plaintiff obtained the modification by email, which was initially sent by Nationstat's counsel to Plaintiff's attorney via email. Plaintiff signed the

agreement, mailed, and emailed the contact to Nationstar, hence informing Nationstar that he accepted of the offer; Plaintiff's attorney also communicated this to Nationstar's counsel.

Defendant effectively signed the agreement because its logo/ signature appears on the modification documentation, authenticating the agreement, which would satisfy the requirement that the contract be signed by the party to be charged, i.e. Nationstar. Georgia law provides that "the signature to a memorandum may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer." *See* Restatement (Second) of Contracts § 134 (1981). *See also* 72 Am.Jur. *Statute of Frauds* § 274 ("A signature used to satisfy the statute of frauds may appear anywhere in a document and may be typed, printed, or stamped, as well as written."). *See White v. BAC Home Loans Servicing, LP,* 2:10-CV-0119-RWS, 2011 WL 4479299 (N.D. Ga. Sept. 26, 2011)

Lastly, Plaintiff made the first and all subsequent permanent modification payments required by the contract. Plaintiff has not missed any of the permanent modification payments.

38.

**BREACH of MODIFICATION:**
Defendant breached its duty under the modification by sending back one of Plaintiff's payments, by falsely reporting that Plaintiff was delinquent in his

payments under the modification, and failing to modify Plaintiff's loan per the permanent modification agreement. See Ex. R & B1. Plaintiffs have adhered to the contract by making their payments in a timely manner since the first scheduled payment date of October 1, 2013. *See* Ex. S. Defendant has breached the contract by not accepting the payments from Plaintiffs, and by attempting to place Plaintiffs in default and take their home.  Moreover, Defendant has acted in bad faith as they would not speak with Plaintiffs nor rectify their mistake and in doing so have harmed Plaintiffs.

39.

**CONTRACT/ SECURITY DEED:**

On September 3, 2003 Plaintiff signed a security deed, which provided the power sale to the MERS as nominee for the GreenPoint Mortgage Funding, Inc.'s successors and assigns in exchange for a loan in the amount of $160,000.00 for the purchase of Property. Subsequently, Nationstar was assigned the deed from BAC Home Loans Servicing, LP. Nationstar, like BAC Home Loans Servicing, LP were charged with complying with all of the terms of the September 3, 2012 security deed. *See* Ex. A

40.

**BREACH of SECURITY DEED:**

Nationstar attempted to foreclose on Plaintiff's property on the first Tuesday in September 2012 and make due all of Plaintiff's principal balance due because of his default. However, Nationstar, nor BAC Home Loans Servicing, LP, provided

the contractually required pre-acceleration notice as directed by paragraph 22 of the security deed. No foreclosure could take place without Nationstar or BAC providing such notice. Hence, Nationstar breached the September 3, 2003 contract when it attempted to make to whole principal amount due and foreclosure on Plaintiff's property in September of 2012. See Ex. L

41.

**DAMAGES:**

Plaintiff has been damaged by the multiple breaches of contract by the Defendants. Plaintiff has had his Property published for non-judicial foreclosure sale in his local county newspaper and on the Internet, which caused him embarrassment and grief. Further, Plaintiff's credit continues to be tarnished because of Nationstar's unwillingness to implement the 2013 loan modification agreement.  As a result Plaintiffs seek to the instatement of the modification agreement, as well as attorney's fees and damages in an amount to be determined by a jury.

### COUNT II- FAILURE TO EXERCISE POWER OF SALE FAIRLY

The Plaintiffs hereby incorporate, re-allege, and adopt by reference as if more fully stated, paragraphs 5 - 35 herein above.

42.

**RULE:**

Under O.C.G.A. § 23–2–114, "[p]owers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised." A

claim for wrongful sale pursuant to O.C.G.A. § 23–2–114 can arise when a creditor forecloses on property without the legal right to do so, in violation of the terms of the deed. *See Brown v. Freedman,* 222 Ga.App. 213, 214(1), 474 S.E.2d 73 (1996).

43.

**BREACH:**

Nationstar through its agent McCalla Raymer, LLC threatened to non-judicially sale Plaintiffs' property on the courthouse steps of Rockdale County on the first Tuesday in September of 2012. However, Nationstar, nor Bank of America, provided Plaintiff with required pre-acceleration notice required by paragraph 22 of the original security deed signed on September 3, 2003. This failure by Nationstar contractually prevented it from exercising or attempting to exercise the power of sale in the security deed, as it had not performed its contractual duty. Though Nationstar sent a letter to Plaintiff on May 31, 2012, prior to the foreclosure sale date providing the amount of the unpaid balance on the loan and that Plaintiff had 30-days to dispute such amount, the letter did meet the requirements of paragraph 22 of the security deed. Furthermore, when Nationstar began publishing Plaintiffs' home for sale in August 2012, such was premised that whole amount owed was due, but such was not the case because the loan had not been properly accelerated. Nationstar knew or should have known that the required pre-acceleration notice should have been provided to Plaintiff. This is especially true as Nationstar was not only the entity attempting to exercise the power of sale

in the security deed, but also was the servicer and had imputed knowledge of Plaintiffs' mortgage file.

44.

**CAUSATION and DAMAGES:**

Plaintiffs have been embarrassed and harassed as a result of Defendants tortious conduct. Plaintiffs had to send letters and eventually file suit just to stop the September 2012 foreclosure sale, despite being in a trail modification and not receiving the proper notice to cure default before foreclosure. Therefore, Plaintiffs seek damages actual and punitive in an amount to be determined at trail.

## COUNT III – DEFAMATION

The Plaintiffs hereby incorporate, re-allege, and adopt by reference as if more fully stated, paragraphs 5 – 35 herein above.

45.

**RULE:**

Under Georgia law, a libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule. O.C.G.A § 51-5-1

46.

**FALSE PUBLICATION:**

Nationstar communicated false information concerning the status of Plaintiff's mortgage account with Nationstar to credit reporting agencies, which is evidenced in Plaintiff's credit report. Nationstar communicated to Experian that Plaintiff was delinquent more than 120 days on his loan and that $36,649.00 was

past due. None of this information is true, as Plaintiff received a loan modification from Nationstar in July 2013, which brought his loan current, changed his principal amount, and changed his monthly mortgage payment. Nationstar knew or should have known that the information that it was disseminating was false, as its own counsel received a copy of the executed modification in July of 2013. Moreover, Plaintiffs repeatedly called and wrote Nationstar explaining to it that they had a valid modification in place. Hence, Nationstar maliciously communicated such false information to the Experian and other credit agencies. "Actual malice" for defamation purposes is issuance of statement with knowledge of its falsity or with reckless disregard of whether statement is true or false. *See Woy v. Turner*, 573 F.Supp. 35 (1983).

47.

**DAMAGES:**

Due to these actions by Defendant, Plaintiffs have been bombarded with solicitations from companies due to the false publication of their delinquency. Defendant has knowingly published false information about Plaintiffs, which has caused monetary damages as well as physical and mental anguish.  Plaintiffs seek compensatory damages and punitive damages in amount to be determined by a jury.

## <u>COUNT IV – BAD FAITH</u>

The Plaintiffs hereby incorporate, re-allege, and adopt by reference as if more fully stated, paragraphs 5 – 35 herein above.

48.

**<u>RULE:</u>**

> "…"the element of bad faith relates  to  the  defendant's conduct in entering into the contract or pertains to the transaction and dealings out of which the cause of action arose, not to the defendant's conduct after the cause of action arose… Moreover, "[e]ven where there is a bona fide controversy as to liability, a jury may find that a defendant acted in the most atrocious bad faith in its dealing with the Plaintiffs."

*City of Lilburn v. Astra Group, Inc.* 286 Ga. App. 568, 571; 649 S.E.2d 813, 816 (2007).

49.

Defendant acted in bad faith, making a contract with Plaintiffs that it had no intention of keeping.  When Nationstar offered the permanent modification to Plaintiffs, they did so behind the bad faith guise of merely pretending to want to avoid foreclosure and litigation.  Nationstar precipitously continued to record the loan default.  If Nationstar were indeed acting in good faith, they would never have so quickly contradicted the contract they had set forth that was indeed accepted and acted upon by Plaintiffs. *See* Exhibit R, S, T & U

50.

> "But the element of bad faith that will support a claim for litigation expenses under O.C.G.A. § 13-6-11 must relate to the acts in the transaction itself prior to the litigation, not to the conduct during or motive with which a party proceeds

in the litigation. And statutory recovery for causing unnecessary trouble and expense is authorized if there exists no bona fide controversy or dispute regarding liability for the underlying cause of action."

*Fresh Floors, Inc. v. Forrest Cambridge Apartments, L.L.C* 257 Ga. App. 270, 271; 570 S.E.2d 590, 591 (2002)

51.

Defendant has shown a continued disregard for adhering to contracts with Plaintiffs; they failed to adhere to statements in the first contract such as "After three months of payments the modification would become permanent." *See* Ex. D. Now under the permanent modification Defendant is acting in bad faith and not abiding by the "automatic" modification for October 2013. *See* Ex. R.   Plaintiffs have acted in good faith despite the bad faith of Defendant, by making their payments in a timely manner only to be meet with further bad faith by Defendant. Defendant claims that Plaintiffs are delinquent, yet it is documented that Defendant has received and accepted numerous modified payments from the Plaintiffs. *See* Ex. S, T, V, X & Y

52.

Defendant Nationstar, with superior knowledge and intention, actively misrepresented events to Plaintiffs in order to cause Plaintiffs to go into foreclosure.  Nationstar did so with the knowledge that if Plaintiffs acted in good faith on these misrepresentations, Plaintiffs would accept the modification program and not pursue other avenues to avoid foreclosure. *See* Ex. T and U

53.

Therefore, due to Defendants bad faith, Plaintiffs having been damaged emotionally and financially in an amount to be determined at trial, as allowed in O.C.G.A. § 13-6-11("The expenses of litigation generally shall not be allowed as a part of the damages; but where the Plaintiffs has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the Plaintiffs unnecessary trouble and expense, the jury may allow them.")

## COUNT V – BREACH OF GOOD FAITH AND FAIR DEALING

The Plaintiffs hereby incorporate, re-allege, and adopt by reference as if more fully stated, paragraphs 5- 35 herein above.

54.

**RULE:**

As there "exists a statutory duty upon a mortgagee to exercise fairly and in good faith the power of sale in a deed to secure debt.... [B]reach of this duty is a tort compensable at law" .*Blanton v. Duru*, 247 Ga. App. 175, 178, 543 S.E.2d 448, 452 (2000). The Georgia Court of Appeals recently reiterated this principle in *Clark v. West, 196 Ga.App. 456, 457(a), 395 S.E.2d 884 (1990)* when it held that "in a wrongful foreclosure action, an injured party may seek damages for *lost earnings, mental anguish* in addition to *cancellation of the foreclosure*.

55.

**CAUSATION and DAMAGES:**

Defendant has began to harass and torment Plaintiffs by continually refusing to adhere to the contract and further by attempting to foreclose upon the Property; while Plaintiffs continue to act in good faith by paying all required money in a timely manner. *See* Ex. S, T, U & V.  Given the fact that Defendant does not have a right to foreclose on the Property as Plaintiffs are not delinquent nor in default on the loan, all actions by Defendant have been performed in bad faith and unfairly.  Due to these events Plaintiffs have experienced mental anguish to which they are due monetary damages as determined by a jury.

## COUNT VI- VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

The Plaintiffs hereby incorporate, re-allege, and adopt by reference as if more fully stated, paragraphs 5 -35 herein above.

56.

**RULE:**

15 U.S.C.A. § 1692e provides that, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.   Without limiting the general application of the foregoing, the following conduct is a violation of this section: **(A)** the character, amount, or legal status of any debt; **(B)(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken; **(8)** Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

57.

**DEBT COLLECTOR:**

15 U.S.C.A. § 1692a states The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose     of which is the collection of any debts, or who regularly collects or attempts to collect,     directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

The loan under Georgia law was still in default despite Plaintiff fulfilling the temporary modification agreement provided by Bank of America, N.A. Nationstar began servicing the loan in May of 2012. The permanent modification agreement was not entered into until July 2013. Therefore, Nationstar began servicing the loan when the loan was still technically in default, unless the court deems that Plaintiff was current under the trail modification, which would make Nationstar a debt collector under 15 U.S.C.A. § 1692a.

58.

**BREACH:**

Nationstar has violated the both 15 U.S.C.A. § 1692e in that it communicated false information about Plaintiff's loan status to credit agencies in 2013 and 2013. Such information was know to be false because Nationstar had offered and Plaintiff accepted a modification agreement in July 2013, which

changed the terms of the loan and brought the loan current. Also, Nationastar on November 6, 2013 sent Plaintiff a letter claiming that Plaintiff owed $36,888.92, which was required to bring his account current. Such amount was false due to the loan modification agreement.

59.

**DAMAGES:**

Defendants' false publications have tarnished Plaintiff's credit history and have caused him to have a lower credit score, which has impacted interest rates he has been offered and whether or not credit will be offered to him at all. He also has been subjected to unauthorized fees, which has unfairly burdened him financially. In addition, such violations give cause for Plaintiff awarded statutory damages and attorney-fees under 15 U.S.C.A. § 1692k, plus damages in an amount to be determined by a jury.

## COUNT VII- VIOLATION OF THE FAIR BUSINESS PRACTICES ACT

The Plaintiffs hereby incorporate, re-allege, and adopt by reference as if more fully stated, paragraphs 5 -35 herein above.

60.

**RULE:**

O.C.G.A. § 10-1-393(a) of the Fair Business Practices Act states that it is unlawful to use "unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

~ 25 ~

61.

**BREACH:**

Plaintiff alleges that Defendants failed to properly credit his account for the payments he made pursuant to a binding modification agreement, ignored his repeated requests to fix the problem over a span of seven months, sent her harassing collection letters, wrongfully threatened foreclosure, and improperly reported to the credit bureaus that he was in default on his loan. This conduct was unfair and deceptive. In *1st Nationwide Collection Agency, Inc. v. Werner*, 288 Ga.App. 457 (2007) the Georgia Appeals Court found that "because misrepresenting consumers' financial indebtedness to others or falsely reporting consumers' credit histories has a potential adverse affect on the consumer marketplace and the economy in general, collecting a debt incurred during a consumer transaction could harm the general consuming public if conducted via deceptive acts or practices and clearly falls within the parameters of the state Fair Business Practices Act (FBPA).

62.

**CAUSATION and DAMAGES:**

Defendants' actions have tarnished Plaintiff's credit history and have caused him to have a lower credit score, which has impacted interest rates he has been offered and whether or not credit will be offered to him at all. He also has been subjected to unauthorized fees and harassing letters and calls from companies

stating they can help him get out of debt, which has unfairly burdened him

financially and caused him mental strife. Plaintiff seeks damages in an amount to

be determined at trial.

## COUNT VIII- VIOLATION OF O.C.G.A. § 7-6A-3(3)

The Plaintiffs hereby incorporate, re-allege, and adopt by reference as if

more fully stated, paragraphs 5 -35 herein above.

63.

**RULE:**

> O.C.G.A. § 7-6A-3(3) states:
> All home loans shall be subject to the following limitations and prohibited practices:
> (3) No creditor or servicer may charge a borrower a late payment charge unless the loan documents specifically authorize the charge, the charge is not imposed unless the payment is past due for ten days or more, and the charge does not exceed 5 percent of the amount of the late payment. A late payment charge may not be imposed more than once with respect to a particular late payment. If a late payment charge is deducted from a payment made on the home loan and such deduction results in a subsequent default on a subsequent payment, no late payment charge may be imposed for such default. A lender may apply any payment made in the order of maturity to a prior period's payment due even if the result is late payment charges accruing on subsequent payments due.

64.

**BREACH:**

Nationstar has failed to modify Plaintiff's loan as contracted in relation to

the July 2013 modification contract. Natinostar has been monthly, charging

Plaintiff late payments when he sends in his modified mortgage payment.

Nationstar continues to assert that Plaintiff's monthly payment is 1,381.01,

~ 27 ~

therefore when Plaintiff sends in his modified payment of $810.35 on time it is seen as a partial payment or sent back and Plaintiff is charged a late fee. Such actions are in direct violations of O.C.G.A. § 7-6A-3(3)

65.

**DAMAGES:**

Plaintiff has been subjected to unwarranted late fees and penalties and had his loan be reported as delinquent to credit agencies. Therefore, Defendants' actions have tarnished Plaintiff's credit history and have caused him to have a lower credit score, which has impacted interest rates he has been offered and whether or not credit will be offered to him at all. He also has been subjected to unauthorized fees, which has unfairly burdened him financially. Plaintiff seeks damages in an amount to be determined at trial.

## DAMAGES

The Plaintiffs hereby incorporate, re-allege, and adopt by reference as if more fully stated, paragraphs 5 - 35 herein above.

66.

In a wrongful foreclosure action, the injured party may seek damages for mental anguish in addition to the cancellation of the foreclosure. *DeGolyer v. Green Tree Servicing*, LLC, 291 Ga. App. 444,662 S.E.2d 141,147 9 Ga. Ct. App. 2008) "As a general precept, damages for mental distress are not recoverable in the absence of physical injury where the claim is premised upon ordinary negligence. However, when the claim is for intentional; misconduct, damages for mental

distress may be recovered without proof of physical injury." *Clark,* 196 Ga. App at 457-58; 395 S.E. 2d at 886 *(quoting Hamilton v. Powell, Goldstien, Frazier & Murphy,* 252 Ga. 149, 150, 311 S.E.2d 818 (Ga. 1984).

An Action for damages for emotional distress in a wrongful foreclosure action is treated as an action for intentional infliction of emotional distress and the Plaintiffs has the burden to prove intentional conduct to cause harm. *McCarter v. Banker Trust Co.*, 543 S.E.2d 755,758 (Ga. Ct. App. 2000).

67.

Defendants' actions were obviously intentional- they wrongfully denied payments and completely disregarded a valid contract.  Further, they made binding contracts and statements in which they committed blatant sabotage to the detriment of Plaintiffs.

**Prayer for Relief**

WHEREFORE, the Plaintiffs pray that this Honorable Court grant the relief herein sought as follows:

- As to Count I, cancelation of the foreclosure proceedings, reinstatement of the terms of the modification agreement, compensatory and punitive damages in an amount to be determined at the time of trial, attorney fees and costs;
- As to Count II, cancelation of the foreclosure proceedings, compensatory and punitive damages in an amount to be determined at the time of trial, attorney fees and costs;
- As to Count III, cancelation of the foreclosure proceedings, compensatory and punitive damages in an amount to be determined at the time of trial, attorney fees and costs;
- As to Count IV, cancelation of the foreclosure proceedings,

compensatory and punitive damages in an amount to be determined at the time of trial, attorney fees and costs;

- As to Count V, cancelation of the foreclosure proceedings, reinstatement of the terms of the modification agreement, compensatory and punitive damages in an amount to be determined at the time of trial, attorney fees and costs;
- As to Count VI, cancelation of the foreclosure proceedings, statutory damages, compensatory and punitive damages in an amount to be determined at the time of trial, attorney fees and costs;
- As to Count VII, cancelation of the foreclosure proceedings, compensatory and punitive damages in an amount to be determined at the time of trial, attorney fees and costs;
- As to Count VIII, cancelation of the foreclosure proceedings, compensatory and punitive damages in an amount to be determined at the time of trial, attorney fees and costs;
- As to Damages, compensatory and punitive damages in an amount to be determined at the time of trial, attorney fees and costs;
- As to Injunctive Relief, prevention of foreclosure sale;
- As to all Counts, attorney fees as allowed by law, interest at the statutory rate, and all other costs of this proceeding as allowed by law;
- For other and further relief as Plaintiffs' may be entitled as provided under Georgia state and federal law; and,
- That Plaintiffs have such other and further relief, as it is just and proper.

Respectfully submitted,

J. G. DAVIS & ASSOCIATES, LLC

By:  */s/ Joshua G. Davis*
JOSHUA G. DAVIS (#514674)
Attorney for Plaintiffs(s)
303 Perimeter Center North
Suite 300
Atlanta, GA 30346
Phone:  (855) 543-2847
Fax:     (855) 814-3619

Dated: This 4th day of September, 2014

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LORENZO and SONYA SADLER

      Plaintiffs,

v.                                Case No.: 1:14-cv-01489-TCB

NATIONSTAR MORTGAGE LLC,
FREDDIE MAC.

      Defendant(s).

_____

J. G. DAVIS & ASSOCIATES, LLC
By: JOSHUA G. DAVIS (#514674)
Attorney for Plaintiffs
303 Perimeter Center North, Suite 300
Atlanta, GA 30346
Phone: (855) 543-2847
Fax:   (855) 814-3619

---

## **JURY DEMAND**

    NOW COMES the Plaintiffs, Lorenzo and Sonya Sadler by and through his

attorney(s), J. G. DAVIS & ASSOCIATES, LLC, by JOSHUA G. DAVIS, and

hereby makes his demand for trial by jury of all issues triable by Jury as a matter of

right.

Respectfully submitted,

                J. G. DAVIS & ASSOCIATES, LLC
                By:   */s/ Joshua G. Davis*
                    JOSHUA G. DAVIS (#514674)
                    Attorney for Plaintiffs(s)

Dated: This 4th day of September, 2014

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

LORENZO and SONYA SADLER

     Plaintiffs,

v.                                  Case No.: 1:14-cv-01489-TCB

NATIONSTAR MORTGAGE LLC,
FREDDIE MAC.

     Defendant(s).

_____

J. G. DAVIS & ASSOCIATES, LLC
By:  JOSHUA G. DAVIS (#514674)
Attorney for Plaintiffs
303 Perimeter Center North, Suite 300
Atlanta, GA 30346
Phone: (855) 543-2847
Fax:    (855) 814-3619

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2014, I electronically filed the foregoing ***Plaintiffs' Amended Complaint for Damages and Injunctive Relief*** with the Clerk of the Court using the CM/ECF System, which sent notification of such filing to all counsel of record.  I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

### *Signature On Next Page*

Respectfully submitted,

                    J. G. DAVIS & ASSOCIATES, LLC

                    By:    */s/ Joshua G. Davis*
                           JOSHUA G. DAVIS (#514674)
                           Attorney for Plaintiffs(s)
                           303 Perimeter Center North
                           Suite 300
                           Atlanta, GA 30346
                           Phone:  (855) 543-2847
                           Fax:     (855) 814-3619

Dated: This 4th day of September, 2014