IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LORENZO SADLER and SONYA   :
SADLER,   :
   :
       Plaintiffs   :
   :    CIVIL ACTION FILE
v.   :    NO.:  1:14-CV-01489-LMM-JCF
   :
NATIONSTAR MORTGAGE LLC   :
and FREDDIE MAC,   :
   :
      Defendants.   :

## NON-FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint.  (Doc. 11).  It is recommended that Defendants' motion be **GRANTED in part** and **DENIED in part**.

## PROCEDURAL HISTORY

Plaintiffs Lorenzo and Sonya Sadler initially filed this action on April 10, 2014 in the Superior Court of Rockdale County, Georgia against Defendants Nationstar Mortgage LLC ("Nationstar") and Freddie Mac.[1]  (Doc. 1-1). Defendants removed the case to this Court on May 16, 2014.  (Doc. 1).  On May

---

[1] The Federal Home Loan Mortgage Corporation is commonly referred to as Freddie Mac.  (*See* Am. Cert. Interested Persons And Corporate Disclosure Statement, Doc. 4 at 1-2).

22, 2014, Defendants filed their first motion to dismiss. (Doc. 5). That motion was denied as moot after Plaintiffs filed their Amended Complaint (Doc. 10) and Defendants filed this new motion to dismiss (Doc. 11). (*See* Doc. 18). Plaintiffs responded to the presently pending motion to dismiss on October 7, 2014. (Doc. 15). On October 23, 2014 Defendants replied. (Doc. 17).

## FACTS

In September of 2003 Plaintiff entered into a loan agreement with Greenpoint Mortgage Funding, Inc., borrowing $160,000 to purchase property located at 1036 Falls Brooke Drive, Conyers, Georgia. (Doc. 10, Am. Compl. ¶ 5). To secure repayment, Plaintiffs executed a security deed conveying the property to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Greenpoint; the deed was recorded in the Office of the Clerk of Superior Court of Rockdale County in Book 2881, Page 50. (*Id.* ¶ 5, 7). Shortly thereafter, Freddie Mac acquired the loan. (*Id.* ¶ 6). On May 6, 2011, MERS assigned the security deed to Bank of America Home Loans Servicing, LP ("BOA"). (*Id.* ¶ 7, Exhibit C).

Plaintiffs allege that on January 13, 2012, BOA approved Plaintiffs for "a trial period plan under the Freddie Mac Modification Program." (*Id.* ¶ 8). Under this plan, Plaintiffs assert they were supposed to make payments of $966.60 for the

months of February, March, and April and if these payments were made, Plaintiffs' proposed modification would be accepted and the loan would be permanently modified. (*Id*.). On April 23, 2012, Plaintiffs received notice from BOA that their loan would be transferred to Nationstar on May 16, 2012. (*Id*. ¶ 9). Plaintiffs were told that the transfer would "not affect any other terms or conditions of your mortgage loan, only those terms related to the servicing of the loan." (*Id.*). On May 31, 2012, Plaintiffs received a letter making them aware that their principal balance at the time of transfer was $145,107.00. (*Id*. ¶ 10).

Plaintiffs allege that they made the three payments as required by the modification trial period plan, in February, March, and April, and further that they made a payment to Nationstar on June 1, 2012. (*Id*. ¶ 11). On July 18, 2012, on Plaintiffs' behalf, J.G. Davis & Associates sent a letter to BOA and Nationstar demanding that Nationstar recognize the loan modification. (*Id*. ¶ 13). Plaintiffs were notified, however, on July 20, 2012 that, despite the attempts at a modification, their loan account had been handed over to a law firm for foreclosure proceedings. (*Id*. ¶ 14). On July 31, 2012, Plaintiffs received a notice of foreclosure sale, providing a non-judicial sale date for the property as the first Tuesday of September, 2012. (*Id*. ¶ 16). Plaintiffs' and Defendants' attorneys and representatives then went back and forth in apparent attempts to resolve the

modification issue. (*Id.* ¶¶ 17-18). At one point Plaintiffs received by email permanent modification documents, which they signed and returned, and made multiple payments on the modified loan, however, some of those payments were returned. (*Id.* ¶¶ 21-30). In February 2014, Freddie Mac alerted Plaintiffs that Nationstar had reported their account as delinquent when Plaintiffs believed that they had been making payments on the modified loan for five months and that everything was up to date. (*Id.* ¶ 31). Plaintiffs discovered that Nationstar had been reporting to credit agencies that Plaintiffs were delinquent on the loan with no mention of the modification which Plaintiffs believed had automatically gone into effect some months prior. (*Id.* ¶ 33).

## DISCUSSION

### I.   Applicable Pleading Standards

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and

4

"only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (explaining that "[t]o survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed" (internal quotation omitted)).

## II.    Count I- Breach Of Contract

Defendants move to dismiss Plaintiffs' breach of contract claim to the extent

that it asserts a cause of action for breach of the original loan agreement. (Doc. 11 at 6). Defendants are not seeking dismissal to the extent this claim applies to an alleged breach of the modification agreement. (*Id.*). Defendants argue that any breach of contract from the 2003 security deed would overlap with Count II and should be dismissed for the same reasons. (*Id.*). However, Count II appears to attempt to assert a tort claim for attempted wrongful foreclosure (a tort claim which Defendants argue has not properly been pled). Defendants have provided no argument, beyond to merely state that the two claims are identical, as to why this breach of contract claim should be considered to overlap with the tort claim. Accordingly, it is recommended that the motion to dismiss Plaintiffs' breach of contract claim to the extent it applies to the 2003 security deed be **DENIED**.

### III.      Count II- Failure To Exercise Power Of Sale Fairly

Plaintiffs' second claim is for a "Failure To Exercise Power Of Sale Fairly." (*See* Doc. 10 at 16-17). Plaintiffs allege that Defendants violated O.C.G.A. § 23-2-114 when it threatened to foreclose on the property without first providing the required pre-acceleration notice. (*Id.*). Defendants argue that this claim should be interpreted as a wrongful foreclosure claim and that Plaintiffs have failed to properly allege a claim since they cannot allege that a foreclosure sale has occurred. (Doc. 11-1 at 7-8).

Because the foreclosure never took place, Plaintiffs cannot assert a cause of action for wrongful foreclosure.  *See Lesman v. MERS*, No. 2:12-CV-00023-RWS, 2013 WL 603895 at \*4 (N.D. Ga. Feb. 19, 2013) (dismissing a claim for wrongful foreclosure as no foreclosure sale had occurred).  Plaintiffs can, however, assert a claim for *attempted* wrongful foreclosure.   "To show wrongful *attempted* foreclosure, [Plaintiffs] must establish 'a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication.' " *Mayrant v. Deutsche Bank Trust Co. Americas*, No. 1:10-CV-3094, 2011 WL 1897674, at \*2 (N.D. Ga. May 17, 2011) (quoting *Aetna Finance Co. v. Culpepper*, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984)).  Plaintiffs allege that Defendants did not send the proper pre-acceleration notification as required by the security deed.  (Doc. 10 ¶ 43).  As a result, they allege Nationstar falsely sent out letters and advertisements claiming that the entire amount of the loan was due but the entire amount was not due since the loan had not been properly accelerated.  (*See* Doc. 10 ¶ 43). Plaintiffs allege this was "a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition" and Defendants have made no argument to the contrary.[2]

---

[2] Defendants argue in their brief in support of the motion that Plaintiffs cannot

Accordingly, it is recommended that Defendants' motion be **GRANTED** to the extent that Plaintiffs' assert a claim for wrongful foreclosure.  It is recommended that Plaintiffs' claim for Failure to Exercise Power of Sale Fairly (Count II) remain to the extent it can be interpreted as a claim for attempted wrongful foreclosure.

### IV.      Count III- Defamation

Defendants argue that Plaintiffs' claim for defamation (Count III) should be dismissed as it is preempted by the Fair Credit Reporting Act ("FCRA").  (Doc. 11-1 at 9).  Plaintiffs argue that the defamation claim alleges that the conduct was malicious or willful, and therefore it is not preempted by the FCRA.  (Doc. 15 at 9).  In their reply, Defendants argue that Plaintiffs have not properly pled that the conduct was willful or malicious, however, even if they had, the claim would still be preempted by the FCRA.  (Doc. 17 at 4-7).

The purpose of the FCRA is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit [etc.] in a manner which is fair and equitable to the consumer, with regards

---

assert a claim for wrongful foreclosure since a foreclosure has yet to occur.  (Doc. 11-1 at 7-8).   Plaintiffs however make clear in their response that they view this as a claim for *attempted* wrongful foreclosure which they can assert before a foreclosure occurs.  (Doc 15 at 6-8).  In their reply brief, Defendants once again argue that Plaintiffs cannot bring a claim for wrongful foreclosure; they do not counter Plaintiffs argument.  (Doc. 17 at 2-4)

to confidentiality, accuracy, relevancy, and proper utilization."   15 U.S.C. § 1681(b).   In addition to the many regulations placed on those who collect and disseminate credit information, the FCRA precludes state law claims which overlap with the regulations from being brought in some instances.  *See e.g.*, 15 U.S.C. 1681h(e) ("no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against…any person who furnishes information to a consumer reporting agency…except as to any false information furnished with malice or willful intent to injure such customer").

Initially, FCRA imposed no obligations on furnishers, but furnishers now have a duty to provide accurate information and to investigate information disputed by a consumer.  *See Spencer v. National City Mortg.*, 831 F. Supp. 2d 1353, 1357 (N.D.Ga. 2011) (citing 15 U.S.C. § 1681s-2).  When a defamation claim is brought against a furnisher of credit information, there are two preemption provisions which could potentially apply: § 1681h(e) and/or § 1681t(b)(1)(F).  For entities that engage in certain regulated behaviors, section 1681h(e) provides immunity from state law claims, unless the plaintiff can prove the act was taken with malice or willful intent to injury.  *Cousin v. Trans Union Corp.*, 246 F.3d 359, 375 (5th Cir. 2001).  Section 1681t was added when the Act was expanded to assign duties

to furnishers, preempting state law claims from applying to "any subject matter regulated under…section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."  15 U.S.C. § 1681t(b)(1)(F). Some tension exists between the two provisions.  Essentially, section 1681t(b)(1)(F) affords greater protection from state law claims as it lacks the exception for malicious or willful conduct which is present in 1681h(e).

Courts have crafted a number of ways to resolve this issue.  *See Spencer*, 831 F. Supp. 2d at 1358-1361 (providing a detailed explanation of the three common approaches and the support for each).  In this Circuit, the current trend is to employ a newer approach, one which finds that no conflict exists between the two preemption provisions.  *See id.* at 1361.  As one court put it,

> Because the [Eleventh Circuit] has yet to address the interplay between § 1681h(e) and § 1681t(b)(1)(F), district courts throughout this circuit have taken a variety of approaches in their attempt to reconcile a perceived conflict between the statutes.  However, the emerging view is that no conflict exists because of the limited scope of § 1681h(e).

*Granville Alley v. Farmers Bank, Inc.*, No. 3:13-CV-146 (CAR), 2014 WL 4287103, at *6 (M.D. Ga. 2014) (citing *Spencer*, 831 F. Supp. 2d at 1361)).  In particular, the *Granville Alley* court looked to the particular kinds of conduct[3]

---

[3] This approach also finds support in a Fourth Circuit opinion which determined that 1681h(e) does not apply to furnishers of credit information, and therefore,

covered by § 1681h(e) and concluded that "The three sections covered by § 1681h(e) . . . apply only to [credit reporting agencies] and users of consumer reports." *Id.* at \*6.

Here, in Count III (Defamation), Plaintiffs allege only that Defendant Nationstar "Communicated false information concerning the status of Plaintiff's mortgage account … to credit reporting agencies." (*See* First Am. Compl., Doc. 10 at ¶ 46). Since Plaintiffs' state law defamation claim attacks the furnishing of information to a credit reporting agency, it is not subject to § 1681h(e), which features an exception for willful misconduct.

---

there is no conflict with 1681t(b)(1)(F), which explicitly applies to furnishers of information. *See Ross v. FDIC*, 625 F.3d 808, 814 (4th Cir. 2010) (explaining that 1681h(e) does not apply to a furnisher which is not a credit reporting agency, a user of consumer reports, or someone who took adverse action based on information contained in a consumer report or information disclosed by a user of such a report). Numerous recent cases in this circuit have endorsed this "no-conflict" approach. *See e.g.*, *Dial v. Midland Funding LLC*, No. 2:14-cv-663-WMA, 2015 WL 751690 (N.D. Ala. Feb. 23, 2015); *Shenkman v. Ocwen Loan Servicing, LLC*, No. CV 214-66, 2014 WL 5791060 (M.D. Ga. Nov. 6, 2014); *Horton v. HSBC Bank*, No. 1:11-CV-3210-TWT, 2013 WL 2452273 (N.D. Ga. June 5, 2013). The Eleventh Circuit, however, has yet to adopt this approach. In a recent case, the Eleventh Circuit did not have to reach the issue, instead finding that, since there was no evidence of falsity or malicious intent, the state-law defamation claim was barred by § 1681h(e) preemption. *See Lofton-Taylor v. Verizon Wireless*, 262 Fed. Appx. 999, 1002-03 (11th Cir. 2008) ("As a result [of the lack of evidence of falsity or malicious intent], we need not decide whether the preemption language in § 1681t(b)(1)(F) is broad enough to also preclude her claims.").

Instead, § 1681t(b)(1)(F) applies. Section 1681t(b)(1)(F) preempts a claim where "(1) the legal duty giving rise to the claim is imposed by state law, and (2) the claim is based on conduct regulated by § 1681s-2." *Granville Alley*, 2014 WL 4287103, at *7. In this case, Plaintiffs have asserted a defamation claim, which is a claim "imposed by state law." Additionally, the claim challenges the alleged false reporting of the status of Plaintiffs' loan which is regulated by § 1681s-2(a) and (b). As was true in *Granville Alley*, "These state law claims concern the Bank's alleged inaccurate reporting of credit information to [credit reporting agencies], an area regulated in great detail under § 1681s-2(a)-(b)." *See id.* at *7.

Accordingly, Plaintiffs' defamation claim (Count III) is preempted by § 1681t(b)(1)(F) of the FCRA and it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** as to this Count.

## V.    Count IV- Bad Faith

Defendants seek to dismiss this count as it is based on a Georgia statute which provides for the recovery of attorney's fees but does not provide a separate cause of action. (Doc. 11 at 9). In their response, Plaintiffs concede that the statute does not provide for a separate cause of action. (Doc. 15 at 10). Accordingly, to the extent that this claim is asserting a separate cause of action, as opposed to merely an avenue to potentially recover attorney's fees, it is

12

recommended that Defendants' motion to dismiss be **GRANTED.**

## VI.      Count V- Breach Of Good Faith And Fair Dealing

Defendants move to dismiss this claim to the extent that it is asserting a cause of action related to the attempted 2012 foreclosure as, Defendants argue, it is not clear from the Amended Complaint what Plaintiffs are seeking.  (Doc. 11 at 10).   Plaintiffs respond, however, that this claim is solely related to the 2013 attempted modification.  (Doc. 15 at 11).   Accordingly, as Plaintiffs concede that the cause of action is not related to this event, it is recommended that the motion be **GRANTED** and Plaintiffs' claim for breach of good faith and fair dealing (Count V) be **DISMISSED** to the extent that it asserts a cause of action relating to the 2012 attempted foreclosure.

## VII.      Count VI- Fair Debt Collections Practices Act Violation

Defendants argue that this claim should be dismissed as Plaintiffs have not properly alleged that Defendants are a debt collector as required by the Fair Debt Collection Practices Act (FDCPA).[4]   (Doc. 11 at 11).   Defendants argue that

---

[4] In their reply brief, Defendants additionally argue that any conduct alleged to have violated the FDCPA which occurred prior to April 10, 2013 would be barred by the FDCPA's one year statute of limitations and that the claim should be dismissed as Defendants' conduct does not qualify as debt collection activity under the statute. (Doc. 17 at 8-11).  The undersigned, however, will not consider these arguments as they were not raised in Defendants' original brief and, as a result, Plaintiff did not get a fair opportunity to respond. *See United States v. Oakley*, 744

neither can be alleged to be a debt collector under the FDCPA as "creditors or mortgage servicers are generally not considered debt collectors."  (Doc. 17 at 9). Plaintiffs respond that, while it is true that mortgage creditors or servicers are *generally* not considered collectors, if the loan is in default when it is acquired, creditors or servicers may be considered a debt collector.  (Doc. 15 at 12).  In their reply, Defendants argue that it is inconsistent for Plaintiffs to assert that the loan was in default when Nationstar acquired the servicing rights as, in other portions of the Amended Complaint they argue that they were not in default when the transfer occurred.  (Doc. 17 at 9-10).

In the Amended Complaint, Plaintiffs allege "[t]he loan under Georgia law was still in default despite Plaintiff[s] fulfilling the temporary modification agreement…Nationstar began servicing the loan in May of 2012.  The permanent modification agreement was not entered into until July 2013.    Therefore, Nationstar began servicing the loan when [it] was still technically in default." (Doc. 10 ¶ 57).  Defendants allege that other portions of the Amended Complaint contradict this allegation and that Plaintiffs cannot plead two contradictory factual assertions.  (Doc. 17 at 9-10).  After a review of the Amended Complaint, the

---

F.2d 1553, 1556 (11th Cir. 1984) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court."); *United States v. Ga. Dep't of Natural Res.*, 897 F. Supp. 1464, 1471 (N.D.Ga. 1995) ("This court will not consider arguments raised for the first time in a reply brief.").

undersigned does not see a clear contradiction.  While Plaintiffs do assert that they were not in default as a result of the modification when Defendants made reports to credit agencies, it is not clear whether they intended to assert that they were not in default from the date of the completed three trial plan payments in April 2012, before Nationstar took over, or whether they intended to assert, as they claim in this portion of the Amended Complaint, that they were no longer in default as of when Plaintiffs signed the permanent modification in July 2013.  Plaintiffs are very clear when pleading this FDCPA claim, however, that they do not allege that they were out of default until July 2013.  (Doc. 10 ¶ 57).  While Plaintiffs do allege that they were told that after the trial modification the loan would be permanently modified, they do not allege that that modification was ever completed to the point where they would no longer be considered in default.  (*See id*. ¶ 8).  Plaintiffs have clearly alleged that Nationstar took over servicing the loan in May of 2012, and the debt was in default when Nationstar took over servicing; no specific allegations clearly dispute these claims.  Therefore, as the loan was in default when Nationstar took over the servicing, they can be considered a debt collector for the purposes of the FDCPA.

Accordingly, it is recommended that Defendants' motion to dismiss be **DENIED** as to Plaintiffs' FDCPA claim (Count VI).

VIII.       **Count VII-Fair Business Practices Act Violation**

Defendants move to dismiss this claim as the Fair Business Practices Act (FBPA) does not allow for a cause of action based upon mortgage transactions. Plaintiffs argue that this limitation is not as broad as Defendants contend.

Plaintiffs allege "that Defendants failed to properly credit [the] account for the payments [Plaintiffs] made pursuant to a binding modification agreement, ignored [] repeated requests to fix the problem over a span of seven months, sent [] harassing collection letters, wrongfully threatened foreclosure, and improperly reported to the credit bureaus that [the loan] was in default."  (Doc. 10 at 26). "Based on the intent of the statute, only the unregulated consumer marketplace falls within the scope of the FBPA, not regulated areas of activity."  *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1375 (M.D. Ga. 2011) (citations omitted).  "Since the area of mortgage transactions is heavily regulated by the Truth in Lending Act, the Real Estate Settlement Procedures Act, and the Georgia Residential Mortgage Act, courts have found it appropriate to dismiss FBPA claims that allege injury based on mortgage transactions."  *Id.* at 1376; *see also Austin v. Bank of Am., N .A.*, No. 1:11-CV-3346-RWS, 2012 WL 928732, at *2 (N.D. Ga. Mar. 16, 2012) (explaining that "[t]he FBPA does not apply to residential mortgage transactions" because "[t]he area of mortgage transactions is

regulated by the Truth in Lending Act, the Real Estate Settlement Procedures Act, and the Georgia Residential Mortgage Act").

Plaintiffs argue however that this is not a blanket exception and that recent cases have limited it. *See Stroman v. Bank of America Corp.*, 852 F.Supp. 2d 1366, 1380-1381 (N.D.Ga. 2012) ("[The assertion that the FBPA does not apply to residential mortgage transactions] appears to be an overly broad interpretation of the statute's exemption of '[a]ctions or transactions *specifically authorized* under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States.' " (quoting *Kitchen v. Ameriquest Mortg. Co.*, No.1:04-CV-2750-BBM, 2005 WL 6931610 (N.D. Ga. Apr. 29, 2005))). The Court is *Stroman* denied a motion to dismiss a FBPA claim finding that "Defendants have not argued and this Court does not find that any of the unfair and deceptive conduct of which Plaintiff complains was specifically authorized under another statute." *Id.* Since *Stroman* however, the Eleventh Circuit as well as other courts in this circuit have endorsed the idea that claims for conduct such as that complained of here do not set forth a cause of action under the FBPA when asserted against servicers or lenders. *See Sheppard v. Bank of Am. N.A.*, 542 Fed.Appx. 789, 793 (11th Cir. 2013) ("it appears the FBPA does not apply to transactions that occur in regulated areas of activity, such as loan lending and

servicing"); *see also Sanders v. Bank of Am., N.A.*, No. 1:13-cv-1904-WSD-RGV, 2013 WL 6587783, at *7 (N.D. Ga. Oct. 1, 2013) (dismissing a cause of action brought under the FBPA as it was asserted against a mortgagor), *adopted by* 2013 WL 6587742 (N.D. Ga. Dec. 16, 2013).

Additionally, the conduct Plaintiffs are complaining of in this claim, that Defendants did not abide by the modification of the mortgage and properly apply Plaintiffs' payments, only affects the Plaintiffs, it does not harm the general public. "[T]he FBPA does not apply to allegedly deceptive acts or practices that have no potential harm to the general consuming public." *Sheppard*, 542 Fed. Appx. at 793 (citing *Zeeman v. Black*, 273 S.E.2d 910, 914-15 (Ga. Ct. App. 1980)).   In *Sheppard*, the plaintiff complained of "unilateral alteration of the repayment terms of her loan" and the Court upheld the District Court's determination that such conduct only applied to the individual, it did not affect the general public, and was therefore not recoverable under the FBPA.   *Id*.   Such is the same with the complained of conduct in this case; Defendants' alleged failure to abide by the alleged modification does not impact anyone other than Plaintiffs.

Accordingly, because the FBPA does not apply to these types of claims, it is recommended that Plaintiffs' claim for violations of the FBPA (Count VII) be **DENIED**.

## <u>CONCLUSION</u>

It is **RECOMMENDED** that Defendants' motion to dismiss (Doc. 11) be **GRANTED in part** and **DENIED in part**.   It is **RECOMMENDED** that Plaintiffs' claim for Failure to Exercise Power of Sale Properly (Count II) to the extent it asserts a claim for wrongful foreclosure, claim for Bad Faith (Count IV) to the extent that it attempts to assert an independent claim, defamation claim (Count III), and claim for Breach of Good Faith and Fair Dealing (Count V) to the extent that it attempts to assert a cause of action relating to the 2012 attempted foreclosure, be **DISMISSED**.   It is further **RECOMMENDED** that Defendants' motion to dismiss as to Count I, Count VI, and Count VII be **DENIED**.

**SO RECOMMENDED** this <u>13th</u> day of <u>May</u>, 2013.

 /s/  J. C<small>LAY</small> F<small>ULLER</small>
J. CLAY FULLER
United States Magistrate Judge

19